**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Garner, et al. | |
| Plaintiffs, | No. CV-15-08147-PCT-PGR |
| vs. | ORDER |
| Mohave County, et al., | |
| Defendants. | |

Pending before the Court is Defendant John Anastasoff's Motion for Partial Judgment on the Pleadings Regarding the Applicability of Qualified Immunity (Doc. 79), to which defendant Donovan Schmidt has filed a joinder (Doc. 77), as have defendants Jonnie Rothermel and Margaret Saltsgiver (Doc. 80). Having considered the parties' memoranda, the Court finds that the motion and its joinders should be denied because it concludes as a matter of law that the individual medical defendants are not within the class of persons to whom qualified immunity is afforded.

The plaintiffs allege in their First Amended Complaint, which contains two federal claims pursuant to 42 U.S.C. § 1983 and a state law wrongful death claim, that Karen Garner, then an inmate in the Mohave County Adult Detention Facility

1  (the "jail") died as a result of the defendants' deliberate indifference to her serious
2  medical needs and their failure to provide her with reasonable medical care while
3  she was incarcerated.  Among the defendants are nurse John Anastasoff, nurse
4  Jonnie Rothermel, nurse Margaret Saltsgiver, and Dr. Donovan Schmidt (collectively
5  the "defendants"), all of whom are non-Mohave County employees who worked at
6  the jail for the private corporate entity, alleged by the defendants to be defendant
7  Corizon Health, Inc., that had a contract with Mohave County to provide medical
8  care to the inmates in the jail.

9  The defendants argue, first, that they are eligible to claim qualified immunity
10 for the constitutional violations alleged against them in the plaintiffs' § 1983 claims
11 and, second, that they are in fact entitled to qualified immunity based on the current
12 record such that the § 1983 claims must be dismissed.  Because the Court is not
13 persuaded that the defendants are eligible for qualified immunity, it does not reach
14 the issue of their entitlement to it.

15 The defendants, who were not public employees at the time of the events at
16 issue, contend that their eligibility for qualified immunity should not be denied merely
17 because they provided the public function of medical care and treatment to the jail
18 inmates through the county's private medical care contractor.  Relying on <u>Filarsky</u>
19 <u>v. Delia</u>, ___ U.S. ___, 132 S.Ct. 1657 (2012), they argue that they should be eligible
20 for the defense of qualified immunity as would county employees performing the
21 same function.  The plaintiffs argue that the defendants are not eligible for qualified
22 immunity pursuant to <u>Richardson v. McKnight</u>, 521 U.S. 399 (1997).  While the law
23 on qualified immunity for private actors performing governmental duties in similar
24 circumstances is not completely settled in this circuit inasmuch as the Ninth Circuit
25 has not examined the reach of <u>Filarsky</u>'s holding in light of <u>Richardson</u> and its Ninth
26

Circuit progeny, the Court agrees with the plaintiffs that the circumstances of this action are more analogous to those of Richardson than those of Filarsky and that the defendants are not eligible for qualified immunity under Richardson.

In Richardson, the Supreme Court held that prison guards employed by a large, for-profit multistate private prison management company that had contracted with the state to manage the prison were not entitled to qualified immunity in a prisoner's § 1983 action against them.  In deciding not to extend qualified immunity to the privately-employed guards, the Supreme Court looked at the history and purposes of qualified immunity. It first concluded that while prisons had historically been run by both public and private state actors, no firmly rooted tradition of immunity for private prison guards had developed around the time § 1983 was adopted in the late Nineteenth Century. It next looked at the purposes behind qualified immunity, which it noted were (1) protecting against unwarranted timidity on the part of government officials, (2) ensuring that talented candidates are not deterred from entering public service, and (3) preventing the distraction of governmental officials by lawsuits. It concluded that none of these purposes mandated qualified immunity for the guards because the problem of unwarranted timidity would be overcome by ordinary market forces as private firms vied to provide the contractual services, because the flexibility of privatization could provide higher pay and benefits and insurance and indemnification to reduce the deterrence factor, and because the distraction of litigation was alone insufficient to justify qualified immunity. 521 U.S. at 409-12.

In reliance on Richardson, the Ninth Circuit, in Jensen v. Lane County, 222 F.3d 570 (9th Cir.2000), subsequently held that a psychiatrist, who was affiliated with a private psychiatric group that contracted with a county facility to provide mental

health care, was not entitled to qualified immunity in a § 1983 action by a prisoner whose detention was temporarily extended by the psychiatrist for a mental health evaluation. The Ninth Circuit, noting that the case was similar enough to Richardson to warrant using its rationale, concluded there was no definitive common law history of immunity that would support a finding of qualified immunity under the circumstances of the case, and that the same market forces and privatization flexibility contemplated in Richardson overcame the timidity and deterrence factors because the private psychiatric group that employed the defendant "must provide psychiatric services for the County with the market threat of replacement for failure to complete [its] duties adequately" and because "the potential for insurance, indemnification agreements, and higher pay all may operate to encourage qualified candidates to engage in this endeavor and to discharge their duties vigorously." 222 F.3d at 578.

In Filarsky, the more recent case on which the defendants rely, the Supreme Court held that a private attorney temporarily retained by a municipality to assist in an internal investigation of a city employee accused of wrongdoing was entitled to seek qualified immunity in a § 1983 action by the employee. It rejected the Ninth Circuit's underlying decision that the attorney was not entitled to qualified immunity solely because he was not a permanent, full-time city employee, noting that the common law did not draw such a distinction and there was no reason to do so under § 1983. In determining that the private attorney was eligible for qualified immunity, the Supreme Court did not call its prior decision in Richardson into question; rather it noted that its decision was not contrary to Richardson. It adopted Richardson's historical and policy factors underlying qualified immunity in § 1983 actions, but distinguished Richardson's outcome on the basis that Richardson was a narrow

decision that was not meant to foreclose all claims of immunity by private individuals; instead, it looked to the fact that Richardson "emphasized that the particular circumstances of that case - a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertaking that task for profit and potentially in competition with other firms - combined sufficiently to mitigate the concerns underlying recognition of governmental immunity under § 1983." 132 S.Ct. at 1667 (internal quotation marks and brackets omitted). The Supreme Court concluded that "[n]othing of the sort" was involved in Filarsky. *Id.*

But something of the Richardson sort is involved here, and the Court agrees with those post-Filarsky cases that have refused to extend Filarsky to privately-employed health care providers working in detention centers or correctional facilities. For example, in McCollum v. Tepe, 693 F.3d 696 (6th Cir.2012), the court concluded that a physician, employed by an independent non-profit organization, who worked part-time for a county as a prison psychiatrist, could not invoke qualified immunity in a § 1983 action arising out of his activities at the prison. Following the Richardson historical and policy factors, the court concluded, after acknowledging Filarsky, that there "does not appear to be any history of immunity for a private doctor working for the government, and the policies that animate our qualified-immunity cases do not justify our creating an immunity unknown to the common law." *Id.* at 704. Also, in Currie v. Chhabra, 728 F.3d 626 (7th Cir.2013), which involved a § 1983 action brought against medical professionals employed by a private company providing medical care to the jail inmates under a contract with the county, affirmed the denial of qualified immunity to the defendants. Although the court concluded that it need not definitively decide the issue of whether the defendants were eligible for qualified

immunity after Filarsky, it noted that it found the Sixth Circuit's post-Filarsky reasoning in McCullum on the qualified immunity eligibility issue to be "persuasive." *Id*. at 632; *see also*, Shields v. Illinois Dept. of Corrections, 746 F.3d 782, 794 n.3 (7th Cir.2014) ("Although *Richardson* involved a private prison, some circuits (including our own) have applied *Richardson* to private medical providers, holding that they are similarly barred from asserting immunity under § 1983.") Therefore,

IT IS ORDERED that Defendant John Anastasoff's Motion for Partial Judgment on the Pleadings Regarding the Applicability of Qualified Immunity (Doc. 79), including all joinders thereto, is denied on the ground that the defense of qualified immunity is not available to the individual medical defendants.

DATED this 22nd day of February, 2016.

Paul G. Rosenblatt
United States District Judge